UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**RICHARD HALL,**

      **Plaintiff,**

v.                                           Case No. 6:20-cv-1992-CEM-LHP

**INSURANCE CORPORATION
OF BRITISH COLUMBIA,**

      **Defendant.**

                                  /

## ORDER

THIS CAUSE is before the Court on Defendant's Amended Motion to Dismiss (Doc. 7) and Plaintiff's Response (Doc. 65). This cause is also before the Court on Defendant's Request for Oral Argument (Doc. 64), Defendant's Motion to Stay (Doc. 100), and Defendant's Motion for Leave to File a Reply (Doc. 105) (collectively "Motions"). For the reasons set forth below, the Motions will be denied.

### I.   BACKGROUND

Plaintiff is a former professional golfer and a citizen of the United Kingdom who has spent a significant portion of time over the last twenty years in Florida. (Compl., Doc. 1-2, at 5–7). During the relevant timeframe, Plaintiff spent at least four months every year in the Orlando area. (*Id.* at 15). Defendant is a "provincial crown corporation organized under the laws of British Columbia, Canada, providing auto insurance, driver licensing, vehicle registration, road safety and other products

and services in British Columbia." (*Id.* at 5). In 2003, while in British Columbia, Plaintiff was in a car accident. (*Id.* at 7). The other vehicle in the accident was insured by Defendant. (*Id.*). As a result of the accident, Plaintiff suffered serious injuries including a traumatic brain injury, for which he submitted an insurance claim to Defendant. (*Id.*).

Plaintiff alleges that upon receipt of his claim, Defendant "began employing questionable tactics." (*Id.* at 10). According to Plaintiff, Defendant's adjustor "began disseminating false and misleading information and making disparaging comments about [Plaintiff] to [Plaintiff's insurer] Allstate which ultimately led to Allstate denying [Plaintiff's] insurance coverage claim." (Hall Decl., Doc. 65-1, at 1).

Plaintiff also asserts that Defendant retained the services of Action Pacific, a private investigative agency in Canada, and its principal, Kenneth Carter, to investigate Plaintiff's claim. (Doc. 1-2 at 10–11). Plaintiff alleges that Carter engaged in various unethical and illegal activities during his investigation. (*Id.* at 11–13). Plaintiff alleges that Carter contacted Plaintiff's primary U.S. immigration sponsor and colleague, David Leadbetter, at Leadbetter's place of business in Orlando, Florida, pretending to be from the Canadian Immigration Department, aggressively questioning Leadbetter and accusing Leadbetter of improper actions in relation to Plaintiff's U.S. immigration process, which Plaintiff claims damaged his reputation with Leadbetter. (*Id.* at 12; Doc. 65-1 at 3). Plaintiff also alleges that Carter made false statements about Plaintiff to Porsche Cars of North America

("PCNA"), which is located in Atlanta, Georgia, and with which Plaintiff had a business partnership. (Doc. 1-2 at 13). According to Plaintiff, Carter's statements resulted in PCNA ending that relationship. (*Id.*).

Plaintiff further alleges that his home in British Columbia was broken into and, during the break in, his computer and email were hacked. (*Id.*; Doc. 65-1 at 3). Although Plaintiff does not directly assert that Carter was the one who broke into his home, he insinuates that someone did it on behalf of Defendant. (Doc. 1-2 at 13–14; Doc. 65-1 at 3). Plaintiff alleges that as a result of this computer hack, an unauthorized email was sent to individuals at the Professional Golfers' Association ("PGA") Tour office in Jacksonville, Florida, which was evidenced by Plaintiff receiving a "bounce back" email from one of the PGA Tour employees. (Doc. 65-1 at 3). Additionally, Plaintiff alleges that information obtained from this computer hack was used to place a false newspaper personal advertisement addressed to him and included the phrase "Beethoven unfinished," which was a personal reference that came from one of Plaintiff's emails that had been stored on his computer. (Doc. 65-1 at 3; Newspaper Ad, Doc. 65-2, at 193). Plaintiff asserts that the email address listed in the ad was based in the United States. As a result, Plaintiff alleges that he was forced to go "off-the-grid" for a number of years, which had a significant negative impact on Plaintiff's business. (Doc. 1-2 at 14–15).

Plaintiff further alleges that he submitted a Freedom of Information ("FOI") request to Defendant, but when he obtained the requested records, significant

portions were deleted. (*Id.* at 15–16). Plaintiff asserts that after he obtained a second FOI disclosure, attempting to obtain the deleted information, Defendant began hacking his computer again. (*Id.* at 18–19). Specifically, Plaintiff alleges that in 2016, while Plaintiff was in New York, his email was hacked; a week later while Plaintiff was in California, his laptop was hacked; and in 2018, while Plaintiff was in Texas, his email was again hacked. (Doc. 65-1 at 4). Finally, Plaintiff alleges that in 2016 and 2017, he was notified by Twitter that there had been attempted hacks into his account. (*Id.* at 4–5). Plaintiff attributes these attacks to Defendant. (*See id.*; Doc. 1-2 at 17–19).

Based on these allegations, Plaintiff brings five claims: violations of Florida's Civil Remedies for Criminal Practices Act, section 772.103(3), Florida Statutes (Count I); violations of Florida's Civil Remedies for Criminal Practices Act, section 772.103(4), Florida Statutes (Count II); tortious interference with a business relationship (Count III); common law conspiracy (Count IV); and intentional infliction of emotional distress (Count V). (Doc. 1-2 at 21–28). Defendant now moves to dismiss this case for lack of subject matter jurisdiction. (*See generally* Doc. 7).

## II.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss the claims against it for "lack of subject-matter jurisdiction." "A plaintiff who seeks to sue a foreign state has the burden of establishing subject matter

jurisdiction by 'producing evidence' that one of the [Foreign Sovereign Immunities Act's ("FSIA")] sovereign-immunity exceptions applies." *Sequeira v. Republic of Nicar.*, 815 F. App'x. 345, 348–49 (11th Cir. 2020) (quoting *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312–13 (11th Cir. 2009)). "A district court determines whether a plaintiff has satisfied this burden by examining the allegations in the complaint and any undisputed facts that the parties submit." *Id.* "If the plaintiff satisfies this burden, the foreign state then has the burden of proving by a preponderance of the evidence that the exception cited by the plaintiff does not apply." *Id.*

### III.   ANALYSIS

Defendant argues that it is not subject to jurisdiction in this Court under FSIA, 28 U.S.C. § 1602 *et seq*. "FSIA 'supplies the ground rules for obtaining jurisdiction over a foreign state in the courts of this country.'" *Glob. Marine Expl., Inc. v. Republic of Fr.*, 33 F.4th 1312, 1318 (11th Cir. 2022) (quoting *Fed. Republic of Ger. v. Philipp*, 141 S. Ct. 703, 709 (2021)). "A 'foreign state' . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). The parties do not dispute that Defendant qualifies as an agency or instrumentality of Canada and therefore is treated as a "foreign state" under FSIA.

FSIA "creates a baseline of immunity from suit and unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Glob. Marine Expl., Inc.*, 33 F.4th at 1318 (internal citation and quotation omitted). One such exception is the commercial activity exception,

which states—"A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon": (1) "a commercial activity carried on in the United States by the foreign state"; (2) "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; or (3) "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Plaintiff asserts that this Court can exercise jurisdiction over Defendant under all three of these clauses.

### A.     Based Upon

"All three of the commercial-activity exception's clauses apply only when the action is 'based upon' the conduct that the exception describes. So at the first step in a commercial-activity-exception case, [the Court] must identify the conduct upon which the suit is based." *Devengoechea v. Bolivarian Republic of Venez.*, 889 F.3d 1213, 1222 (11th Cir. 2018) (internal citation omitted). "That, in turn, requires [the Court] to look at 'the particular conduct that constitutes the gravamen of the suit.' In other words, [the] focus [is] on the 'core' of the suit—the foreign state's 'acts that actually injured' the plaintiff." *Id.* (quoting *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015)); *see also Sequeira*, 815 F. App'x. at 348–49 ("In ascertaining the gravamen of a complaint, courts are to focus on the core conduct giving rise to the suit rather than individually analyzing the elements of each cause of action.").

"[T]he gravamina of different claims may occur in different locations." *Devengoechea*, 889 F.3d at 1223.

As laid out thoroughly in the background, the overarching activity that Defendant was allegedly engaged in was investigating and harassing Plaintiff. There are two categories of actions within this umbrella that Plaintiff's claims are based upon: (1) communications made by Defendant, including through its agents, to Plaintiff's business partners—Leadbetter, PCNA, the PGA Tour, and Allstate; and (2) Defendant's alleged hacking into and monitoring of Plaintiff's computer. The Court now turns to the question of whether Defendant was engaged in "commercial activity" when undertaking these actions.

### B. Commercial Activity

FSIA defines "commercial activity," as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). Further, "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* While this definition "'leaves the critical term "commercial" largely undefined,' the Supreme Court has explained that 'when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are "commercial" within the meaning of the FSIA.'" *Glob. Marine Expl., Inc.*, 33 F.4th at 1318 (quoting *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 612, 614 (1992)). "For example, a foreign state's 'issuance of regulations limiting foreign currency exchange is a sovereign activity, because such authoritative control of commerce cannot be exercised by a private party' while 'a contract to buy army boots or even bullets is a "commercial" activity, because private companies can similarly use sales contracts to acquire goods.'" *Id.* (quoting *Weltover*, 504 U.S. at 614–15).

Defendant asserts that it was not engaged in commercial activity because it does not operate, conduct, or engage in business in the United States; it only provides insurance to vehicles registered in British Columbia. Defendant has skipped a step in the analysis. As noted above, the question of whether Defendant is engaged in commercial activity does not examine where the activity took place, it simply

examines the nature of the activity. So, at this point of the analysis, the Court must only look at whether Defendant was "acting in the manner of a private party" or engaging in acts that "can be performed only by the state acting as such." *Id.* at 1318–19.

Here, Defendant was unquestionably acting as a private party. Defendant was acting as an insurer that was processing a claim and, in doing so, hired an investigator to look into Plaintiff and his claim. Defendant is also alleged to have paid the investigator to engage in unscrupulous acts—including misleading communications with Plaintiff's business partners and hacking into and monitoring Plaintiff's computer. None of these acts constitutes a "sovereign activity." *Id.* at 1318. Defendant was engaged in commercial activity.

### C. Second and Third Clauses

Since the Court has identified the conduct upon which Plaintiff's claims are based and has determined that Defendant engaged in commercial activity in this case, the Court must now evaluate whether the allegations in this case satisfy the circumstances of any of the commercial activity exception clauses. *Devengoechea*, 889 F.3d at 1224. Plaintiff asserts that all three clauses apply here, but the Court need only consider the second and third clauses.

As discussed above, the acts that underlie Plaintiff's claims occurred between the United States and Canada. To the extent that the acts occurred in the United States, the Court has already determined that they were done in connection with

Defendant's commercial activity in Canada, so those acts clearly fall within clause two—"an act performed in the United States in connection with a commercial activity of the foreign state elsewhere."

To the extent that the acts occurred outside of the United States, they fall within the third clause. The third clause applies when the case is "based upon" "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). "[A]n effect is direct if it follows as an immediate consequence of the defendant[']s activity." *Weltover*, 504 U.S. at 618. "The effect must be more than purely trivial or remote and attenuated, but it need not be a substantial or foreseeable effect. In evaluating a direct effect, [courts] ask, Was the effect sufficiently direct and sufficiently in the United States that Congress would have wanted an American court to hear the case?" *Devengoechea*, 889 F.3d at 1224 (internal quotation and citation omitted).

Even assuming that Defendant's alleged communications and computer hacks can be considered acts that occurred outside of the United States, they clearly caused a direct effect in the United States. As to the communications, it is alleged that Defendant contacted Plaintiff's business partners, who were located in the United States, and made statements that Defendant knew or should have known were false, misleading, and prejudicial towards Plaintiff. The alleged effect of those communications was the loss of business relationships and sponsorships within the

United States. This is sufficient to satisfy the third clause. *See World Wide Demil, LLC v. Nammo*, 51 F. App'x 403, 407 (4th Cir. 2002) (determining that a foreign entity's out-of-country actions that tortiously interfered with the plaintiff's United States-based business relationships had a sufficiently direct effect in the United States to satisfy the third clause of the commercial activities exception).

It is also alleged that after the original hack of Plaintiff's computer in 2004, Defendant regularly monitored Plaintiff's computer, including during at least four months each year that Plaintiff resided in Florida, which disrupted Plaintiff's ability to use his computer and conduct any online business. It is also alleged that this monitoring culminated in several direct attacks while Plaintiff was in the United States. Again, even assuming that this monitoring and these later attacks constitute acts that occurred outside of the United States, the effect of these acts—Plaintiff's inability to use his computer and problems with his email and social media accounts—occurred while Plaintiff was in the United States. These effects were directly felt in the United States, and therefore, the third clause is satisfied. *See Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1545 (11th Cir. 1993) (focusing on the fact that the plaintiff's injuries occurred in the United States); *see also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013) (noting that the analogous Due Process analysis for exercising personal jurisdiction can be satisfied where the plaintiff's claims arise out of the defendant's contacts with the forum and the defendant commits a tort that was intentional, aimed at the forum, and

"caused harm that the defendant should have anticipated would be suffered in the forum" (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008) and citing generally *Calder v. Jones*, 465 U.S. 783 (1984)).

Defendant's reliance on *Jung Nyeo Lee v. Insurance Corp. of British Columbia* is misplaced. No. 2:16-cv-00084, 2017 U.S. Dist. LEXIS 136319, at *5 (W.D. Wash. Aug. 24, 2017). First, it is an unpublished, non-binding, out-of-circuit district court case. Second, it is factually distinguishable. There, the claims were based on the non-payment of benefits under an insurance contract, *id.*; here, the insurance contract is simply background information—the claims in this case are based on Defendant's alleged tortious and criminal conduct committed during its investigation of Plaintiff.

Additionally, to the extent that Defendant argues that the commercial activities exception cannot apply to claims that sound in tort, (*see* Doc. 7 at 14), Defendant does not cite any authority in support, and such a proposition is contrary to Eleventh Circuit case law. *Vermeulen*, 985 F.2d at 1544 & n.13 (applying the commercial activity exception to the plaintiff's negligent design and manufacture claims and explaining, "[t]he fact that [the plaintiff] seeks to recover for personal injuries does not belie the commercial nature of [the defendant's] activity and thus does not require [the Court] to analyze this case under the 'noncommercial torts' exception to foreign sovereign immunity").

Plaintiff has established that the commercial activity exception of FSIA applies, and Defendant is not entitled to sovereign immunity.

## IV. CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Amended Motion to Dismiss (Doc. 7) is **DENIED**.

2. Defendant's Request for Oral Argument (Doc. 64) is **DENIED**.

3. Defendant's Motion to Stay (Doc. 100) is **DENIED**.

4. Defendant's Motion for Leave to File a Reply (Doc. 105) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on September 27, 2022.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record